F4E9ARAS

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4              v.                        13 CR 811 (ALC)

5  GUILLERMO ARAUJO,

6              Defendant.

7  ------------------------------x

8                                       New York, N.Y.
                                        April 14, 2015
9                                       4:19 p.m.

10

   Before:
11
                    HON. ANDREW L. CARTER, JR.
12
                                        District Judge
13

14                       APPEARANCES

15 PREET BHARARA
        United States Attorney for the
16      Southern District of New York
   JASON MASIMORE
17      Assistant United States Attorney

18 DAVIS POLK & WARDWELL
        Attorneys for Defendant
19 MARTINE M. BEAMON
   RACHELLE NAVARRO
20 JAMIE BAGLIEBTER

21

22

23

24

25

F4E9ARAS

```
 1              (In open court; case called)
 2              MR. MASIMORE:  Good afternoon, your Honor.
 3              Jason Masimore for the government.  With me is
 4    probation officer Emily Frankelis.
 5              MS. BEAMON:  Martine Beamon, Rachelle Navarro and
 6    Jamie Bagliebter of Davis Polk for Mr. Araujo.
 7              THE COURT:  Good afternoon.
 8              Good afternoon, Mr. Araujo.
 9              THE DEFENDANT:  Good afternoon, sir.
10              THE COURT:  In preparation for today's sentencing I've
11    reviewed the presentence report and submissions by defense
12    counsel.
13              I don't believe I have a submission from the
14    government.
15              Is there anything else that I should have?
16              MR. MASIMORE:  No.  That's correct, your Honor.
17              MS. BEAMON:  Your Honor, I just received one
18    additional letter from the family.  It's from Mr. Araujo's
19    mother.  May I hand it up to the Court?  I have reviewed it
20    with the government.
21              THE COURT:  Counsel for the government has a copy as
22    well?
23              MR. MASIMORE:  I have seen a copy.
24              MS. BEAMON:  Thank you, your Honor.  And my apologies.
25              THE COURT:  Just one moment.
```

F4E9ARAS

1                  (Pause)

2                  Thank you.  I believe I've already done this but to

3      the extent that I haven't, so the record is complete, I accept

4      his guilty plea.

5                  Counsel for the defense, have you read the presentence

6      report and reviewed it with your client?

7                  MS. BEAMON:  We have, your Honor.

8                  THE COURT:  Mr. Araujo, have you had the opportunity

9      to see the presentence report and let your attorney know about

10     anything that should be corrected in there?

11                 THE DEFENDANT:  Yes, your Honor.

12                 THE COURT:  Counsel for the government, have you

13     reviewed the presentence report?

14                 MR. MASIMORE:  I have, your Honor.

15                 THE COURT:  I haven't seen any objections to anything

16     in the presentence report by the defense or the government.

17                 Are there any objections to the presentence report or

18     anything in the presentence report by the government or the

19     defense?

20                 MS. BEAMON:  Your Honor, as an addendum to our letter

21     in connection with the sentencing we attached a letter that we

22     sent to the probation office after we received the probation

23     office's recommendation.  It relates not to the acceptance of

24     the full scope of the conspiracy but the number of burglaries

25     in which Mr. Araujo is specifically alleged to have

F4E9ARAS

1    participated in.

2              In truth, your Honor, I think that it's beside the

3    point in the sense that Mr. Araujo has accepted responsibility

4    fully for the full scope of the conspiracy.  But we just wanted

5    to be clear with the probation department -- we hadn't objected

6    to any of the facts.  We just wanted to make clear what our

7    agreement was with the government.

8              So I think there is nothing more that your Honor has

9    to do, and Ms. Frankelis has responded and has not changed her

10   recommendation.  So I don't think that there's anything further

11   that your Honor needs to take up.

12             THE COURT:  Thank you.  Government anything to add on

13   that?

14             MR. MASIMORE:  No, your Honor.  I'm happy to answer

15   any questions if the Court has any.

16             THE COURT:  Although I'm no longer required to adhere

17   strictly to the Sentencing Guidelines it's still necessary for

18   me to determine the appropriate guideline range.  I have looked

19   at the presentence report.  I've done my own guideline

20   calculation.  And I am going to adopt the guideline calculation

21   set forth in the presentence report.  I don't believe there are

22   any objections to that.  But I want to just confirm that for

23   the record.

24             Is there any objection to the guideline calculation as

25   set forth in the presentence report by the defense?

5

F4E9ARAS

1          MS. BEAMON:  No, your Honor.  We arrived at the plea

2     agreement -- at it from a different mechanism, but we don't

3     object to the calculation in the PSR.

4          THE COURT:  By the government?

5          MR. MASIMORE:  I have the same response as the

6     defense.  No objection.

7          THE COURT:  So, based on my own evaluation of the

8     guideline range and also based on the lack of any objection by

9     the government or the defense, I find that the guideline total

10    offense level is 27, Criminal History Category III, which has a

11    guideline range of 87 to 108 months.

12          This is the point in which I generally want to hear

13    from both sides regarding any issue they wish to raise

14    regarding sentencing.  But there is something that the defense

15    has pointed out in their submission that I'd like the parties

16    to address, and it may be necessary to adjourn the sentence to

17    give the parties some more time to address that and to give me

18    total clarification on these issues.  So let me just tell the

19    parties what I think I need further elucidation on.

20          The defense has raised the issue of Mr. Araujo's state

21    sentences for conduct that is related to the conduct charged

22    here in federal court, and has made certain requests and

23    assertions regarding the amount of time that he should get

24    credit for or might get credit for.  And there is a request

25    that I run the sentence here, whatever that sentence is going

F4E9ARAS

1      to be, concurrent with the undischarged term of custody that he

2      still needs to serve in state court.

3             Let me tell the parties what my initial thinking is on

4      that.  I have not yet decided what the sentence should be in

5      this case.  But my inclination is that whatever that sentence

6      is or will be he should not end up doing more time as a result

7      of being picked up by the state earlier for conduct that is

8      clearly relevant to the conduct here.  That is what the

9      guidelines advise me to do.  And I think that that's

10     appropriate in this case as well.

11            So I want to get a clearer sense from the parties

12     regarding that.  My understanding is, based on the defense

13     submission, is that there are two prior state convictions for

14     burglaries that are related to this case.  And on one of those

15     cases in the state he was sentenced to a term of, I believe, 18

16     months.  And that sentence has been complete.  On the other one

17     he was sentenced to a term of 3 to 6 years, had served 10

18     months, was released, was on parole or on supervision, violated

19     a term of supervision, was told to complete drug treatment and

20     in the midst of that drug treatment was picked up by federal

21     authorities and brought over on a writ here.

22            Is that a fair assessment of what's going on here?

23            MS. BEAMON:  That's all correct, your Honor.

24            THE COURT:  And the government, is that correct?

25            MR. MASIMORE:  That's our understanding as well.

7

F4E9ARAS

1         THE COURT:  The defense wants me to, as I understand

2    it, give him credit for the 18 months that he has already

3    served in state custody because since that sentence has been

4    fully discharged he will not get credit for that sentence here,

5    but maybe that's where I'm mistaking what the defense's

6    position is.  Can I get some further elucidation from the

7    defense on that.

8         MS. BEAMON:  Certainly, your Honor.  So there -- as

9    your Honor points out, there are two -- I consider them to be

10   two categories.  First, the sentences that he previously

11   served.  Just in state custody.  No involvement by the federal

12   court.  And then the time that he has been in custody on the

13   writ.  And that's about 17 months, your Honor, rather than 19.

14        It's our understanding, through some kind of arcane

15   counting mechanism, that Mr. Araujo does not get credit in

16   federal custody for the time that he has spent in federal

17   custody on the writ.  And so one category that we request -- we

18   understand that it is a common solution in this courthouse and

19   across the street -- is that when someone hasn't been in on a

20   writ, into federal custody, that the Court has -- often gives

21   credit for that time so that they are not -- so that the

22   defendant is not losing that time essentially.

23        It's particularly an acute situation here because the

24   state sentence from which he was writted on would have been

25   satisfied some time ago, probably within a month of -- two

F4E9ARAS

```
1    months of arriving in federal custody, because he was just

2    completing that program.  He had been asked to complete a

3    particular program.  So it's particularly acute here, that he's

4    in on the writ from federal custody and doing time that he

5    wouldn't have had to do in the state.

6              THE COURT:  So, again, I just want to make sure that

7    I'm clear.  Because it sounds like there's three different time

8    periods that we're talking about.  There's the 18 months for a

9    prior sentence.  There's the 10 months for an earlier sentence.

10   And then there's the 17 months on the time that he's been here

11   on the writ.

12             MS. BEAMON:  That's a better way to think of it, your

13   Honor, you're right.

14             THE COURT:  And my understanding is that the defense

15   wants me to run whatever this sentence will be concurrent with

16   the undischarged term of the state sentence; is that correct?

17             MS. BEAMON:  That's correct, your Honor.  And I have

18   to say that that's a belt and suspenders request, your Honor,

19   to be sure that there will be no further double counting.  So

20   we're requesting the credit and then that prospectively any

21   sentence be served -- that this sentence be served concurrently

22   with any undischarged state sentence.

23             THE COURT:  That's what I guess I'd like to get some

24   further information on.  Because what I'm concerned about -- an

25   again the guidelines suggest that there should be one
```

F4E9ARAS

```
 1    overarching term of custody for this relevant conduct.  And I

 2    agree with that in this case.

 3            What I'm concerned about is if I reduce his sentence

 4    here by 17 months to give him credit for time that he would not

 5    be receiving otherwise.  And if I give him credit for the 18

 6    months, which it seems more clear to me that he would not get

 7    credit for that, it would be impossible for me to run a

 8    sentence concurrent with a sentence that's already been served.

 9            MS. BEAMON:  That's correct.

10            THE COURT:  Then there's the issue of the ten months

11    and the issue of the undischarged term.  And I'm not clear from

12    what the defense has submitted -- and I'm not sure the defense

13    knows -- how much more time he needs to serve in state custody.

14    I'm not sure if there's a conditional release date.  And what

15    I'm concerned about is even if I were to say I am going to run

16    this sentence concurrent with the undischarged term of the

17    state sentence there is no guarantee that that would actually

18    be effective because if the Bureau of Prisons does not give

19    him -- my saying that doesn't require the Bureau of Prisons to

20    give him credit for that time.  I don't believe so.  That's

21    what I'm concerned about.  And it may be -- that's what I'm

22    concerned about.  I think I need more information about when

23    his conditional release date and the like is.

24            MS. BEAMON:  Sure.  Your Honor my colleague Rachelle

25    Navarro is here at counsel table, has spent hours on the phone
```

F4E9ARAS

with New York state authorities as well to make sure that we

have this all correct.  I can tell you that what Mr. Araujo was

facing at the time that he was writted here was an additional

one month incarceration at Willard where he was doing further

drug treatment.  That was the extent of what had been ordered

at the time, your Honor, with respect to his parole issue.

It's not technically revocation.  That's why I'm calling it

parole issue.  So he would have been discharged one month after

he had come into federal custody had he had not come and had

there been no further issues.

    We understand that his maximum release date or the

maximum period during which he can be subject to parole is

March of 2018, your Honor.  So that is three years from now,

approximately, a little less than three years from now.

    But I'm not sure that answers all of your Honor's

questions.  I think that perhaps one of the things your Honor

is asking is -- what we do know -- let me say what we do know

and make us sure that I understand your Honor's questions.

    So with respect to the past offenses, I think your

Honor is correct past offenses -- past sentences served in the

state, your Honor is correct, that time was done.  There's

nothing more to run concurrently.

    With respect to the 17 months that he has spent in

custody now, the first issue is has he been -- is he being

credited in federal custody for that time?  And we think the

F4E9ARAS

1   only way for him to be credited in federal custody is for your

2   Honor to credit him on the sentence.

3          With respect to that same amount of time on the state

4   side, I think the answer is we do not know for certain that it

5   will be credited to him on the state side, even though it's

6   running in the state, it is conceivable that he will have to go

7   back to Willard and serve another month, although we will

8   pursue with the state authorities whether we can get them to

9   credit his federal time so that he does not have to return to

10  Willard and finish out a sentence, and that any additional time

11  that could be -- for which his parole could be revoked, to the

12  extent that that's going -- on a going forward basis, that if

13  your Honor runs the federal sentence concurrent with that state

14  time, that that will cover the remainder of his parole, his

15  period on parole.

16         Conferring with my colleague.  Did I get that all

17  right?  I'm getting a nod, your Honor.

18         THE COURT:  What I want to be clear about is I want to

19  make sure there is no double counting either way.  If I give

20  him credit off of this sentence -- if I subtract 17 months from

21  this sentence then there is no issue in terms of that 17 months

22  being concurrent with anything.  He will have received credit

23  for that.

24         MS. BEAMON:  That is correct, your Honor.

25         I guess -- it would not be a double count, your Honor.

12

F4E9ARAS

1    But while he was here -- conceivably the state could say that

2    with respect to that one additional month that he was to serve

3    at Willard, that he might get credit for that month while he

4    was in federal custody, since your Honor is crediting him.

5             THE COURT:  I guess -- I'm not as concerned with what

6    the state does in terms of the state trying to run something

7    concurrent in terms of that month there or not.

8             MS. BEAMON:  Yes.

9             THE COURT:  My sense is that it's clearer under New

10   York State's corrections law that the state can run their

11   sentences concurrent with the federal sentences in a much more

12   efficient manner.  That's not quite what my concern is.

13            My concern is assuming I reduce his sentence by 17

14   months which then eliminates in terms of federally this issue

15   of concurrent time for that 17 months, in terms of him doing an

16   additional 17 months that he wouldn't have to do.

17            MS. BEAMON:  Yes.

18            THE COURT:  By giving him credit for those 17 months,

19   that takes care of that issue.

20            In terms of assuming that the sentence that I impose

21   is greater than 17 months, whatever additional sentence is

22   imposed, the fact that I announce that I want that to run

23   concurrent with a state sentence, I'm not sure that the Bureau

24   of Prisons is bound by that.  I'm not sure where he will be a

25   prisoner.  It seems that -- my sense is right now, and that's

F4E9ARAS

1  why I'd like some further information from the parties, my

2  sense is he's a state prisoner right now.  And if I run this

3  federal sentence concurrent with this other sentence and he's

4  still technically in state custody, I'm not sure if that's

5  going to effectuate what we're all trying to -- or at least

6  what I am trying to accomplish.  I guess I shouldn't say what

7  we are all trying to accomplish, but what the guidelines tell

8  me I should try to do.

9      It certainly is possible that there are other

10 solutions.  It certainly may be that it's more appropriate to

11 reduce the sentence some other way and run this sentence

12 consecutive and just make sure that there is a total sentence

13 of whatever it is that I find to be appropriate will be served.

14 But I want to make sure that there is no situation in which I

15 am intending to run something federally concurrent with a state

16 sentence that is not actually going to be effective.  So I

17 think my sense is we may need to adjourn this so that I can get

18 some more information.

19      You're talking about his maximum expiration date.

20 Again, what I'm concerned about is giving him too much credit.

21 Right.  His maximum expiration date is not the same as his

22 conditional release date.  If the maximum expiration date is

23 essentially three years from now and if I were to give him

24 credit for all of that time, then I'm giving him essentially

25 perhaps too much credit if his conditional release date is a

F4E9ARAS

month from now or eight months from now.  So I want to make

sure that I'm doing everything appropriately and not giving him

too little credit but also not giving him too much credit for

that as well.  So I think it's important for me to have not

just the maximum expiration date but the conditional release

date and get a further sense from the state as to what's going

on and what potentially might go on.

          MS. BEAMON:  May I have one moment, your Honor?

          THE COURT:  Yes.

          (Pause)

          MS. BEAMON:  So, your Honor, one thing that we don't

have a precise date on despite hours on the phone with BOP in

the state is a precise conditional release date.  So we'd be

happy to get that for your Honor.

          My colleague is noting that one possibility, and

perhaps your Honor would still like briefing, but I'll just

mention it, but one possibility that we have mentioned in our

sentencing letter is that if Mr. Araujo were returned to

Willard to serve out his time, then we would have a fixed end

date for his state time and then he could be sentenced and your

Honor would have the full benefit of the knowledge with respect

to his state custody.

          But if your Honor would like, we can explore all of

this, put it in a letter, we can work with the government to

make sure that we're all on the same page precisely on that and

F4E9ARAS

1    then we can further brief it for your Honor.

2              THE COURT:  And how would that be accomplished?  That

3    sounds like that would be something that would require the

4    government to indicate that the writ was potentially satisfied

5    and then re-writ him back here.

6              MS. BEAMON:  I think that's right, your Honor.  I

7    think they'd have to put -- they'd have to put a hold -- they'd

8    have to release -- say the writ is satisfied and then they'd

9    have to put another hold on him so that when he's released from

10   state custody that he's marked released into the public and

11   then he will be brought back into federal custody.

12             THE COURT:  Does the government have any position on

13   that?

14             MR. MASIMORE:  I'm certainly willing to explore that

15   possibility.  It seems to make sense that if there's just

16   approximately 30 days left on a state sentence to send him back

17   to fulfill, that sort of takes care of that issue and it seems

18   like it would make it easier for the Court to arrive at a

19   sentence that achieves what the Court is trying to do.  I can

20   look into the mechanical requirements that I have to do,

21   whether I say it's satisfied, whether I say it's on hold.

22             I guess the other thing we would have to look into is

23   what we would need in place, whether we would need -- what we

24   would need in place to make sure that at the end of his term at

25   Willard he's not released but is brought back to our custody.

F4E9ARAS

1    Sounds like we would have a little time to work that out.

2    Maybe we could figure that out.

3              THE COURT:  So why don't we do this.  A couple of

4    things.  Obviously we're going to need to adjourn the sentence

5    so that I can get this information and/or so that the parties

6    can perhaps work amongst themselves.  I'm certainly willing to

7    go along with that if that's something the government and the

8    defense wish to do.  I'll go along with that and he can go back

9    to state -- to the state and figure out what's going to happen

10   with his state sentence and then we can come back here.  I'm

11   certainly willing to do that.

12             The other thing I would like to do, though, is that it

13   seems there are many family members and friends here in the

14   audience.  I know this case was originally scheduled for

15   sentencing yesterday.  There was some mixup and Mr. Araujo

16   wasn't produced.  I will give the defense an opportunity, if

17   they like -- you don't have to -- to call one of those family

18   members to address me if they'd like to do that and we can do

19   that now while the family members are here because I'm not

20   sure -- they've obviously taken time out of their day.  I'm not

21   sure if they will be able to make it here the next day,

22   whenever that is going to be.

23             Is the defense interested in doing anything like that?

24             MS. BEAMON:  We are, your Honor.

25             I just note for the record, so that your Honor has the

F4E9ARAS

numbers.   There are eleven of Mr. Araujo's friends and family

members present here today.   There were an additional four

individuals who were here yesterday for the sentencing who

could not be here today; so, fifteen in total.   And I believe

that it is Mr. Araujo's sister, Julie, who would like to speak

to the Court briefly.

          THE COURT:   So let's have her come into the witness

stand.

   JULIE AQUINO,

     called as a witness by the Defendant,

     having been duly sworn, testified as follows:

          THE COURT:   Speak into the microphone so we can hear

you.

          Do you have any questions for this witness, counsel.

          MS. BEAMON:   I think that Ms. Aquino just wanted to

make a brief statement, your Honor, on behalf of the family.

          THE COURT:   Okay.

          THE WITNESS:   Good afternoon, your Honor.   My name --

          THE COURT:   Please speak into the microphone.

          THE WITNESS:   Good afternoon, your Honor.

          My name is Julie Aquino.   I'm Guillermo Araujo's

sister.

          Today in the audience is his mother, Teresa Aquino.

His dad, Guillermo Araujo.   His son, Guillermo Araujo, Jr.

He's three years old.   His niece, Kilsi Polanco.   His

F4E9ARAS

girlfriend, Yocania Rosario.  The mother of his child, Michele

Guzman.  Kimberly, Cynthia, and Katherine, his friends.  And

Elizabeth Baptista is the grandmother of his child.  And Africa

Dominguez, she's a friend.

So today, in these 18 months I want -- I know my

brother Guillermo has made a mistake.  In these 18 months, I

have seen a great change in him.  I'm proud of him.  He knows

what he's done has been wrong.  And we are here a hundred

percent to support him and guide him through the correct path.

And his son is here too, misses him and prays everyday in

church for his return home.  And I'm just here to say that we

love him.  We miss him.  And as his family we're going to help

him, guide and go through this.  And when he comes home we are

going to show him to continue going through the correct path so

he will not commit this again.

THE COURT:  Thank you.  Counsel for the government do

you have any questions?

MR. MASIMORE:  No questions, your Honor.

MS. BEAMON:  Thank you, your Honor.

Thank you, Julie.

THE WITNESS:  You're welcome.

THE COURT:  I would like to thank all the members of

the family for being here and showing your support today and

I'd like to thank everyone for submitting all of those letters

that are very helpful for me in making this difficult decision.

F4E9ARAS

1    So I thank you for all of that.  Thank you for your support of

2    Mr. Araujo.  And thank you in advance for your continued

3    support for him.

4            So, again, I think it's appropriate to adjourn this

5    matter and we'll deal with the rest of the sentencing issues

6    later.  But let's go ahead and adjourn this matter.

7            Yes, counsel.

8            MR. MASIMORE:  Your Honor, may I make one additional

9    request.  We handed up earlier an amended preliminary

10   forfeiture order.  The parties have signed it.  I think the

11   Court could enter that today and that would be not at

12   cross-purposes with what we're trying to achieve with respect

13   to the length of the sentence.

14           THE COURT:  Defense counsel?

15           MS. BEAMON:  We don't have any objection to that, your

16   Honor.

17           THE COURT:  Okay.

18           I have the amended forfeiture order on consent before

19   me.  I will enter that.  Is there anything else we need to deal

20   with today?

21           MS. BEAMON:  Your Honor, can I just make one more note

22   because we'll explain this at some length in our -- additional

23   submissions to your Honor about the length of time.

24           But your Honor correctly notes that there are

25   essentially three periods that we've been focused on:  An

F4E9ARAS

1    18-month sentence, a 10-month sentence, and then the time he's

2    been here on the writ.  I just wanted to make clear, and we'll

3    go into this in more detail.  The 18-month sentence in the

4    state was a discharged sentence.  The 10-month sentence in the

5    state is an undischarged sentence.  From a 3553(a) perspective,

6    your Honor is free to consider both of those sentences in the

7    same manner.  But the guidelines actually address discharged

8    and undischarged sentences slightly differently.  The effect,

9    your Honor, I don't think is any different.  But we can go into

10   that in some greater detail in the sentencing submission.  And

11   there's a specific note to the commentary that I'll highlight

12   for your Honor in that regard.  But nothing that needs to be

13   done today.

14          THE COURT:  So why don't we do this.  Counsel for the

15   government has indicated that he's willing to explore the

16   possibilities of allowing Mr. Araujo to return to state custody

17   and figure out what's going on with that parole revocation and

18   that's something that the defense has requested and I'm willing

19   to go along with that.

20          Why don't we do this.  Why don't we set a date

21   approximately 30 days from now.  But in the interim I'll ask

22   the parties to give me a joint status report in two weeks.  And

23   that status report should obviously deal with these issues

24   concerning the writ.

25          It seems as, at least of today, the parties are in

F4E9ARAS

1    agreement that they'd like to try to effectuate some sort of

2    procedure to make sure that Mr. Araujo can go back into -- more

3    fully into state custody, resolve those issues while still

4    having a hold here federally, so he's not released into the

5    general public after the state case has been totally resolved,

6    and then being brought back here.

7            So how does that sound to the parties as a possible

8    suggestion?  We'll have a joint status report in two weeks.

9    We'll set a control date for 30 days or perhaps -- perhaps we

10   don't need a control date.  Perhaps we'll just have a joint

11   status report -- no.  Let's have a control -- let me just find

12   out.  If I set a control date, does counsel for the government

13   know if there is a date on the calendar for Mr. Araujo, is that

14   going to frustrate any -- in terms -- is that going to be

15   somehow frustrating your efforts to say the writ is satisfied

16   if there's a date on the calendar?

17           MR. MASIMORE:  I don't think it will.  I think it

18   makes sense if we put a date on the calendar.  If I find out

19   that this is something we can do and that what is frustrating

20   it is that date, perhaps I can write a letter and ask the Court

21   to take the date off the calendar.  I don't see why it would

22   frustrate the effort because I think we sort of have control

23   over that by requesting the writ; otherwise, the state doesn't

24   even know about a date.  So I think that would be fine.

25           I would just ask that it be -- the status letter be

F4E9ARAS

1    due two weeks from Friday, if possible.

2              THE COURT:  That's fine.  So let's have that due on

3    May 1.  And let's set a sentencing date, a control date, let's

4    say, perhaps May 15.

5              MR. MASIMORE:  Your Honor, one other thing that

6    occurred to me.  Perhaps it may actually help our efforts if

7    the Court were to set a sentencing date somewhat far out

8    because then maybe -- again I have to find out if this is a

9    possibility -- if we mark the writ as satisfied, then there

10   will be this other date that I could then use for another writ,

11   just to give us the most options available.

12             THE COURT:  Defense counsel have any position on that?

13             MS. BEAMON:  That's fine, your Honor.  And then we

14   can -- we might have more clarity in two weeks and then we can

15   always revise as necessary.

16             THE COURT:  So let's do that.  Why don't we pick a

17   date sometime for the middle or end of July, Tara.

18             THE DEPUTY CLERK:  Friday, July 17 at 11:00 a.m.

19             THE COURT:  Does that work for everyone?

20             MS. BEAMON:  Yes.  Your Honor, I presume that if we

21   feel -- we understand that this cannot satisfy the Court's

22   concern, then we can move that up.

23             THE COURT:  Yes.

24             Anything else from the government today?

25             MR. MASIMORE:  Your Honor, I understand Probation

F4E9ARAS

1    Officer Frankelis will not be around on July 17.

2                THE COURT:  Is the following week better for you?

3                MS. FRANKELIS:  Your Honor, I have a preplanned

4    vacation that entire week but the following week I'm available.

5                THE COURT:  Can we do July 24, Tara?

6                THE DEPUTY CLERK:  Yes.  At 2:00 p.m.

7                THE COURT:  Does that work for everyone?

8                MS. BEAMON:  That's fine, your Honor.

9                MR. MASIMORE:  Yes, your Honor.

10               THE COURT:  So July 24 at 2:00 p.m.

11               Anything else from the government today?

12               MR. MASIMORE:  No, your Honor.  Thank you.

13               THE COURT:  Anything else from the defense?

14               MS. BEAMON:  No, your Honor.  Thank you very much.

15               THE COURT:  So, Mr. Araujo, do you understand what's

16   happening here today?  We're adjourning the sentence because I

17   want to get more information about what's going on in the

18   state.  Do you understand that?

19               THE DEFENDANT:  Sir, yes, sir.  Thank you, your Honor.

20               THE COURT:  All right.  Thank you.  Everyone have a

21   good day.  Thank you, marshals.

22               (Adjourned)

23

24

25