F71daras

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,                New York, N.Y.

4              v.                            13 Cr. 0811(ALC)

5   GUILLERMO ARAUJO,

6              Defendant.

7   ------------------------------x

8
                                             July 1, 2015
9                                            2:43 p.m.

10
    Before:
11
                     HON. ANDREW L. CARTER, JR.,
12
                                             District Judge
13

14                        APPEARANCES

15  PREET BHARARA
         United States Attorney for the
16       Southern District of New York
    BY:  RUSSELL CAPONE
17       Assistant United States Attorney

18  DAVIS POLK & WARDWELL L.L.P.
         Attorneys for Defendant
19  BY:  MARTINE M. BEAMON
         JAMIE BAGLIEBTER
20       RACHELLE NAVARRO

21

22

23

24

25

F71daras

1          THE CLERK:  Criminal cause for a sentencing in case

2     number 13 Cr. 811, United States v. Guillermo Araujo.

3          Counsel, please state your appearance for the

4     government.

5          MR. CAPONE:  Russell Capone for the government.  Good

6     afternoon, your Honor.

7          THE CLERK:  And for the defendant.

8          MS. NAVARRO:  Your Honor, Rachelle Navarro for the

9     defendant.  I will also note that Ms. Martine Beamon is just

10    downstairs and she is held up coming up.  So if we could just

11    wait a movement?

12         THE COURT:  OK.

13         MS. NAVARRO:  Apologies on that.

14         THE COURT:  All right.

15         (Pause)

16         MS. BEAMON:  Your Honor, my apologies.

17         THE COURT:  OK.

18         OK.  Good afternoon Mr. Araujo.

19         THE DEFENDANT:  Good afternoon, your Honor.

20         THE COURT:  OK.  Are the parties prepared to go

21    forward with sentencing today?

22         MR. CAPONE:  Yes, your Honor.

23         MS. BEAMON:  Yes, your Honor.

24         THE COURT:  Where we left off the last time is that

25    there was a legal issue that still needed to be dealt with

F71daras

regarding time that Mr. Araujo has spent in custody in state

court, specifically time that he spent for two sentences

previously imposed as well as the time that he has been in on a

writ from the state.

I want to just try to get clarification from the

defense as to specifically what it is that you are asking me to

do.  On April 1st you asked me to give him -- I understand that

your basic position is you want me to give him credit or to

make sure that he doesn't do double time, and I understand

that.  But the language that was used in the April submission,

you talk about credit, and in the Bureau of Prisons' "credit"

has a very specific sort of meaning.  Credit can only be given

by the Bureau of Prisons.  I understand what you are asking me

to do generally, but there is a difference in terms of how I

can make sure that he doesn't do time for his state conviction

and his federal conviction consecutively for the same relevant

conduct, and it seems that perhaps your position has changed

from April.

In April, you had indicated that there were two

sentences, for 18 months and 10 months, respectively, that were

discharged sentences, and under the guidelines there is a

difference as to how I make any changes to the guideline range

or to his ultimate sentence based on whether or not the terms

that we're talking about, in terms of state court, were

discharged sentences or for an undischarged sentence.  Earlier,

F71daras

1    I had understood that you were taking the position that there

2    were a total of 28 months that there needed to be some sort of

3    modification based on an 18-month sentence that was discharged

4    and a 10-month sentence that was discharged, and you also

5    wanted to get some sort of modification for the time that he

6    had spent here on a writ.

7              In your most recent submission as of yesterday, you

8    are indicating that there is 18 months for a discharged 2008

9    conviction and 33 months for an undischarged 2012 conviction.

10   So I understand what you are asking me to do is to make sure

11   that that 51-month period of time, that there is some

12   modification to reflect that.  But am I correct in -- let me

13   just get clarification from you as to what your position is

14   regarding the 2012 conviction.  Is it that there are 10 months

15   that have been discharged and then there is another portion

16   that is undischarged, or is your position now that it is all

17   undischarged?  What is your position exactly?

18             MS. BEAMON:  Can I have one moment, your Honor?

19             THE COURT:  Yes.

20             (Pause)

21             MS. BEAMON:  So, your Honor, if I may?  First, to

22   answer your specific question, it is our view that the 2008

23   conviction is fully discharged, but the 2012 conviction is

24   undischarged even though some portion of the time has already

25   been served.  And I think the way that we spoke about it, your

F71daras

Honor, previously was that conceptually -- and I think it was

your Honor's suggestion to break it down this way -- there were

three distinct tranches of time.  The first was the time that

Mr. Araujo served for the 2008 conviction, and that was 18

months.  Then with respect to the 2012 conviction, there are

two portions.  One is the time that he has already served, and

that we know is now 14 months, your Honor, and then the time

that he has spent in federal custody while on the writ, and

that is now, just by the passage of time, 19 months.

THE COURT:  OK.

MS. BEAMON:  But the entirety -- we believe that the

way that the guidelines discuss this and the way that the case

law reads is because there is still time remaining on his 2012

conviction as a result of the parole violation is that you call

that whole conviction undischarged even though some portion of

the time has been served.

THE COURT:  All right.  Government have any position

on this?

MR. CAPONE:  Your Honor, having looked at it, I think

we do agree as to the 2012 conviction under the guidelines,

since it is an undischarged conviction, that whatever ultimate

guidelines' range your Honor concludes is appropriate, that the

sentence can be adjusted -- the guidelines' range can be

adjusted to reflect those 33 months.

The 2008 conviction is fully discharged.  So while

F71daras

1    there may be a 3553(a) argument, I don't think that any actual

2    guidelines' adjustment is warranted.

3             THE COURT:  OK.  Tell me a little bit more.  What do

4    you mean by that, Mr. Capone?

5             MR. CAPONE:  Well, Section 5G1.3(b)(1) of the

6    guidelines, which I think is the relevant section, talks about

7    adjusting the sentence for undischarged terms of imprisonment.

8    2008 is fully discharged.  So I just don't think this provision

9    is applicable.

10            THE COURT:  Correct.  What is your position on what

11   would be applicable?

12            MR. CAPONE:  As to the 2008 conviction?

13            THE COURT:  Yes.

14            MR. CAPONE:  Nothing, your Honor.  I mean, the defense

15   may have again a 3553(a) argument that he has served some time

16   for this relevant conduct, but I don't know that a guideline --

17   I don't think any adjustment under the guidelines is

18   appropriate.  I don't see it here in 5G1.3.

19            THE COURT:  Right.  It is not in 5G1.3, but does

20   defense counsel have any take on that?

21            MS. BEAMON:  Yes, your Honor.  With respect to 2008,

22   we think that the operative provision is 5G1.3 and it's

23   Application Note 5.

24            Your Honor, we are prohibited, I want to make clear,

25   from our plea agreement from making a downward departure

F71daras

request, but I believe that the same criteria apply for a
request under 3553(e), and my request is under that provision.
But using this Application Note 5 as guidance, it provides that
in the case of a discharged term of imprisonment, a downward
departure is not prohibited if the defendant (1) has completed
serving a term of imprisonment and (b) -- Subsection (b) would
have provided an adjustment had that completed term of
imprisonment been undischarged at the time of sentencing in the
instant offense.

          And we believe that if your Honor turns back to
5G1.3(b), that Subsection (b) would have applied.  This is
relevant conduct to the instant offense.  There is no
disagreement about that with the government.  And it is our
understanding, based on a reading of 5G1.3(b), that this is
precisely the type of adjustment that can be made to a sentence
because it is relevant conduct.

          THE COURT:  OK.  I believe that there is -- and I
guess I'll give the parties notice of this if the parties feel
that they didn't have notice of this.  I feel there is another
section of the guidelines that would apply specifically to the
2008 conviction, and that's Section 5K2.23, which deals with
discharged terms of imprisonment.  And that's why -- while I
understand the parties' basic argument here is to the fact that
there needs to be a modification, I need to make sure that any
modification that is made is made appropriately.

8

F71daras

1          5G1.3 is mandatory and it talks about an adjustment.

2    Again, the word "adjustment" is used very specifically there

3    for a particular circumstance, which I don't think the 2008

4    conviction applies to 5G1.3.  I do think that it's applicable

5    to 5K2.23 as a discharged term of imprisonment, which is not

6    mandatory, but I have the authority to downwardly depart in my

7    discretion under 5K2.23.

8          So I guess I will give the parties notice of that if

9    the parties wish to -- need some time to about that some more.

10   But it seems to me that the 2008 conviction would squarely fit

11   under 5K2.23.  It very well may be that the portion of the 2012

12   conviction that has already been served also fits under 5K2.23,

13   and then for the remainder of the sentence that is

14   undischarged, then we're talking about potentially 5G1.3.

15         But do the parties need any time to look into that or

16   think about that?

17         MS. BEAMON:  Not the defense, your Honor.  And we note

18   that the Application Note from which I was just reading under

19   5G1.3, Application Note 5, makes specific reference to 5K2.23.

20   So we are on all fours with your Honor with respect to the

21   application of that note -- of that note and that section,

22   5K2.23.

23         THE COURT:  And counsel for the government?

24         MR. CAPONE:  Yes, your Honor.  I don't think we need

25   any more time.  That makes sense to me.  I understand that your

F71daras

1    Honor can take the 2008 conviction into consideration as a

2    result of this provision.

3         I would note that both of these convictions are for

4    two burglaries.  The amount of burglaries at issue here is far

5    more than two.  This is a small, small -- while it may be

6    significant in terms of the time he spent in prison, it is a

7    small portion of the burglaries that he committed.  In fact,

8    the PSR references 21 burglaries committed by the defendant,

9    every single one of which is after both the 2008 and the 2010

10   conviction.  So I agree your Honor can take it into account,

11   but what weight it's worth, I'm not sure it is worth that much

12   weight in light of the repeated burglaries after both

13   convictions.

14        THE COURT:  OK.  What is the parties' position on the

15   portion -- the 14 months that have been served on the 2012

16   conviction and whether 5K2.23 applies or 5G1.3 or neither,

17   both?  What are the parties' position on that?

18        MS. BEAMON:  Your Honor, it remains our view that it

19   is undischarged even though some portion of it has already been

20   served, and that is because time remains on that charge.

21        THE COURT:  The government take any position on this?

22        MR. CAPONE:  That seems correct, your Honor.

23        THE COURT:  All right.  I will be right back.  Let me

24   think about this for a moment.

25        MS. BEAMON:  Yes, your Honor.

F71daras

1          (Recess)

2          THE COURT:  OK.  I believe also where we left off the

3    last time, that I had determined the guideline range that

4    applies to this case; is my recollection correct?

5          MS. BEAMON:  That is correct, your Honor.

6          MR. CAPONE:  Yes, your Honor.

7          THE COURT:  Ant that it was 87 to 108 months, is that

8    correct?

9          MS. BEAMON:  Yes, your Honor.

10         MR. CAPONE:  Yes, your Honor.

11         THE COURT:  So I will -- and, again, since 5K2.23 is

12   technically a departure, as opposed to a variance, under 18

13   U.S.C. 3553(a), does the government wish to have an adjournment

14   or any more time to respond to that in terms of --

15         MR. CAPONE:  No, your Honor.

16         THE COURT:  OK.  Does the defense?

17         MS. BEAMON:  No, your Honor.

18         THE COURT:  OK.  All right.  So I will make the

19   modification.  I will downwardly depart under 5K2.23 and

20   subtract the 18 months of the discharged sentence for 2008 from

21   the guideline range.  I will also, under 5G1.3, make an

22   adjustment for the other 33 months of the undischarged term

23   that he has served for the 2012 conviction.  Resulting in a

24   total modification -- the combination of a downward departure

25   and an adjustment -- of 51 months, resulting in a guideline

F71daras

1   range of 36 to 57 months.  Is my math correct?

2           MS. BEAMON:  Yes, your Honor.

3           MR. CAPONE:  I think so, your Honor.

4           THE COURT:  OK.  I will hear from the parties

5   regarding any issues they wish to raise regarding the

6   appropriate sentence in this case, starting with defense

7   counsel.

8           MS. BEAMON:  Thank you, your Honor.

9           I will not repeat all of the arguments that we made in

10  our sentencing submission, which I know the Court is more than

11  familiar with.

12          I do think -- this, your Honor, is my last case on the

13  CJA Panel.  I have been on the panel for -- I think three terms

14  of three years -- I think nine years, your Honor, and maybe a

15  little bit longer, since this is at the very tail end of my

16  service.  And while I have had many, many matters where

17  individuals had been born into terrible circumstances, I have

18  to say that I have not seen the type of addiction at such an

19  early age as I have seen with Mr. Araujo.

20          And I offer that, your Honor, as I hope we make clear

21  in our sentencing submission, not as a matter of excuse but as

22  a matter of explanation.  It has seemed to me, since we have

23  been working with Mr. Araujo, that so much of his development

24  really stopped at age 12 or 11, when he began using drugs, and

25  that his judgment really from then on was really terribly

F71daras

1   impaired and he really did set upon a downward spiral where he,

2   you know, could not succeed in school and ultimately I think it

3   led to the life that has resulted in his presence here today.

4           Again, your Honor, it is not by way of excuse.

5   Mr. Araujo himself, we think quite eloquently in his letter,

6   has indicated that he should have made better choices and takes

7   full responsibility for his conduct.  But, you know, it is our

8   view that his addiction played a dramatic role in how he comes

9   before the Court today.

10          And so, your Honor, while we absolutely are of the

11  view that this conduct was serious and that Mr. Araujo is very

12  sorry for his behavior and takes full responsibility for his

13  behavior, we do believe that all of the circumstances of his

14  life and the offenses does suggest that he should be receiving

15  a sentence, respectfully, at the low end of the guidelines'

16  range.

17          THE COURT:  OK.  Let me hear from the government.

18          MR. CAPONE:  Your Honor, I don't have too much to add.

19          My understanding is that Mr. Masimore spoke in terms

20  of the government's view on sentencing at the last proceeding,

21  and I understand and agree with the guidelines' adjustments.

22          Again, I just wanted to make sure the Court is aware

23  that these are two burglaries in a long line of burglaries,

24  most of which were committed after the previous convictions and

25  sentences of -- the sentences of two, three and four years did

F71daras

1    nothing to deter the defendant from committing burglary after

2    burglary after burglary.  So I do think a significant sentence

3    for deterrence's sake is important.

4              THE COURT:  Thank you.

5              Let me ask defense counsel, just if you can, to

6    comment on that, because it does seem that -- I certainly

7    doesn't wish to minimize his addiction, but he certainly seems

8    to be -- to the extent he is an addict, he seems to be a

9    functioning addict and he seems to be functioning primarily as

10   a burglar, starting at the age of 16.  So he seems to have

11   specialized in committing burglaries.  That is sort of his

12   second job or maybe even his primary job in addition to

13   welding.  He does have a skill as a welder.  He was employed as

14   a welder and still engaged in this conduct and, again, seems to

15   have specialized in this conduct.

16             Can you just address that?

17             MS. BEAMON:  Sure, your Honor.  First, with respect to

18   the timeline, if I can just make sure I have it correct.

19   Because our view is that, really, a dramatic change came about

20   in Mr. Araujo's life after the Shock Incarceration Program that

21   he underwent.  And that actually occurred beginning in 2012.

22   So the robberies for which he was convicted was in 2010, but he

23   was not sentenced until 2012, your Honor, and he has committed

24   no pharmacy burglaries since that time.

25             And it was really critical from our perspective and

F71daras

1   from the perspective of all of those with whom we spoke who are

2   in Mr. Araujo's life that following Shock, he had a real

3   change, a dramatic change.  And at the time he stopped using

4   drugs, it was a real shock to his system -- no pun intended --

5   as we put in our letter, because it gave him, frankly,

6   structure and self-confidence that he had never had before.

7            And while, your Honor, Mr. Araujo did work from time

8   to time in his father's garage, he is not a trained welder,

9   from my understanding, and his relationship with his father is

10  quite complicated, your Honor.  I think we lay out some of that

11  in our sentencing submissions.  But it was not the type of

12  relationship in which he was brought along to have a job in his

13  dad's shop, the way that some family businesses operate.

14           And I think, your Honor, it is fair to say that during

15  this entire period he was functioning, to the extent that, with

16  others, he was able to participate in the burglary conspiracy,

17  but he was not functioning, frankly, your Honor, in any other

18  way.  And we detailed what his days were like.  He would get up

19  and smoke marijuana.  He would meet up with pals.  He would get

20  something to eat.  He really was not someone who had any

21  structure about him.  He didn't function in any way that we are

22  all familiar with as members -- functioning members of society.

23           So we think that the turning point for Mr. Araujo was

24  really with the Shock Program, where he had the first taste and

25  first experience since he had dropped out of school of any

F71daras

structure in his life whatsoever, and it was the first time
that he really saw what he could do with himself and how he
could function without drugs.

So we don't think that it is a fair argument to make
that the other sentences, that he didn't learn anything from
his other sentences.  In fact, he learned a great deal,
particularly with respect to the 2012 program, which, really,
we think was a dramatic life event.

THE COURT:  OK.  I'm not so much focusing on --
obviously, I'm focusing on all of the prior sentences.  I'm not
so much focusing on the 2012 or even the 2008.  But starting
back in 2005, at the age of 16, he had a youthful offender
adjudication for a burglary and then in September of 2007
another burglary.  And it seems, again, that that's something
that he specialized in doing and as a young person who was able
to carry off these burglaries relatively successfully.

So I guess what I'm curious to hear is when he gets
out what is going to be different?  At the time that all of
this is happening, he has a child and he's a stepfather to his
other child, he had a job.  And that wasn't enough motivation
for him to try to put some structure in his life himself.  My
concern is not so much how he reacts when he's in the Shock
Program at Willard or when he is in jail but how is he going to
react when he's out and he has these temptations, driven by
whatever desire they are driven by, to commit burglaries or to

F71daras

1   commit these other crimes instead of working and trying to be

2   there to support his family?

3           MS. BEAMON:  Your Honor, we and Mr. Araujo have spent

4   a great deal of time talking through exactly what his plan will

5   be, what he wants to do, what he wants to make of his time in

6   incarceration and what he wants to do next.  We think that

7   critical to his plan going forward -- and it's something that

8   he suggested, was absolutely driven by Mr. Araujo -- and that

9   is that he can not return to the neighborhood in which he grew

10  up.  And I think that that's a very difficult thing to say, to

11  admit to yourself that you can't be part of that same

12  environment.  But that is -- that was at his own insistence,

13  something that he wanted to do.  He wanted to move away -- he

14  wants to move away from the neighborhood.  He wants to take his

15  son away from the neighborhood.

16          And his son, your Honor, just to clarify, is only 3

17  years old now and was born only shortly before went into the

18  Shock Program.  And I think that he has -- I think that Shock

19  helped him realize how important it was for him to be a father.

20  And as we note in the submission, he has taken courses at

21  MDC -- and they have limited course offerings, but just about

22  the effect of incarceration on children.  So I think that has

23  prompted him to do a great deal of soul searching about what he

24  wants to do.

25          So that is step one in terms of not falling back into

F71daras

1    the same behavior.  He has managed to stay drug-free even upon

2    release from Shock.  But now the question is how does he take

3    that and leverage it to a better future.  He thinks the first

4    step I think has to be leaving the neighborhood.

5         You know, he certainly has talked about whether or not

6    he will go back to welding and whether or not he will try to

7    work at his father's shop.  That opportunity is open to him.

8    And he has that and he would -- he has that as one possibility

9    that he is considering.  But, your Honor, we don't want -- and

10   I think Mr. Araujo will tell you that he's not sure that that

11   makes the most sense for him, that it might be more

12   profitable -- I don't mean from a financial perspective but,

13   really, it may be a better situation for him not to even be

14   back in that same environ, but it does give him a ready

15   opportunity to have a job right out of his release.

16        And he's also talked about being involved with car

17   service.  He very much would like to be involved in a car

18   service.  As we all know, there are more opportunities now to

19   do that as a result of some of the technological advances, and

20   he was hoping that that might give him an opportunity to get on

21   his feet and be involved in a new business.

22        He's also contemplating whether he should return to

23   school.  He has been attempting to get his GED, your Honor.

24   And then depending on where he is located, he will have

25   opportunities to either do vocational or further education

F71daras

1    training.

2              So while we do not have a set plan for Mr. Araujo upon

3    his release, he has several opportunities for jobs and several

4    ideas about how he wants to actually progress.

5              THE COURT:  OK.  And how is Mr. Araujo going to -- I

6    understand he takes the position he wants to move away from the

7    neighborhood, take his son away from the neighborhood, and

8    that's fine if he chooses to do that.  It seems to me that,

9    based on the information that I have, it's going to be

10   impossible for him to avoid the neighborhood.  The welding shop

11   is owned by his aunt.  His father works there, and the mother

12   of his child is a secretary at that welding shop.  So can you

13   tell me how he's going to avoid it?  It can't be as simple as,

14   well, if I'm in the neighborhood I'm just going to just fall

15   back into this sort of behavior.  Can you tell me more about

16   that?

17             MS. BEAMON:  Sure, your Honor.  I don't mean to

18   suggest that just by going back to the neighborhood, he will.

19   We think Mr. Araujo is very proud of the fact that after his

20   release from the Shock Program he did not return, for example,

21   to using drugs.  And that is right back in the neighborhood,

22   right back in the environs.  So he has absolutely shown

23   tremendous self-restrain.

24             I think his goal would be to move out of the

25   neighborhood because it is just -- from his perspective, it is

F71daras

1    not the best environment for him or his son to be in just

2    because of the lure of some of those things and because of his

3    peers, who have been in the neighborhood and with whom he grew

4    up.

5         We are not suggesting that the move has to be a

6    dramatic move across country or, you know, to some far-flung

7    location, but even the matter of a few neighborhoods away,

8    where he can come to the welding shop as necessary, if that is

9    where his job is going to be.  If his son remains located in

10   that area, he can come and visit.  But it will not be his

11   entire community.  And we don't think that that's without

12   difficulties, your Honor, but his family has pledged its

13   support to assist him in this endeavor.

14        And so we think that it can be really small steps but

15   enough just to get him away from the situation in which he

16   found himself.

17             THE COURT:  OK.  Thank you.

18             Anything else from the government?

19             MR. CAPONE:  No, your Honor.

20             THE COURT:  OK.  Mr. Araujo, if you would like, I will

21   give you an opportunity to address me.  You can say anything

22   you want regarding sentencing.  You don't have to say anything,

23   but if you would like, I will give you an opportunity.

24             THE DEFENDANT:  Yes, sir.

25             Good afternoon, your Honor.  Thank you for giving me a

F71daras

chance to speak, sir.

First I would like to say I'm sorry to everyone here, especially to all the business owners who work hard every day just to provide the services to our community.  I'm sorry I caused loss and aggravation.  Please forgive me.

Also, I would like to apologize to my family for all the stress I put on them.  Thank you for being the best parents anyone could ever ask for.  I would like to say thank you to my girlfriend and my family for supporting me and coming to see me at the MDC Brooklyn facility, where I have been incarcerated for the last three years.

The consequences of these crimes saved my life in many good ways, your Honor.  While serving the first part of this sentence at the Monterey Shock Program, I learned so much about myself that I never knew existed.  And when I first got to the program, my attitude was cheap and lousy, and for the most part, your Honor, I thought boot camp wasn't for me.  I also thought that I could just breeze right through the six-month course and get back on my former lifestyle.  Your Honor, this wasn't the case, and I experienced what is called a rude shock awakening.

The military training was the balance I needed to become the person I am today.  The lesson learned there was that everything in life has its process.  But through sweat, dedication and persistence, anything I put myself out, progress

F71daras

1    will eventually follow.  Your Honor, these are the same

2    principles that I intend to employ in my everyday release.

3            Life, now upon my release, as I now focus and will

4    have the opportunity of maintaining a family-owned business

5    that will help find my parental skills so that I would be able

6    to set the right example for my children and I could provide

7    the support and education so that they could be successful for

8    this community without the trials and tribulations that I went

9    through in my unguided youth for years.

10           One again, your Honor, I consider this speech as a new

11   brighter start now awaits me.

12           Thank you, your Honor, so much for giving me a chance

13   to speak.  You may proceed with sentencing, sir.

14           THE COURT:  OK.  Thank you.

15           I will give defense counsel -- if you would like, I

16   will give an opportunity if there is any family that you would

17   like to call as a witness to address me, I will give you an

18   opportunity to call one member, if you would like.

19           MS. BEAMON:  Your Honor, at our previous sentence one

20   of Mr. Araujo's family members spoke, and we don't think that

21   we need require any further on that, your Honor.

22           THE COURT:  OK.  Thank you.

23           Anything else from the government?

24           MR. CAPONE:  No, your Honor.  Thank you.

25           THE COURT:  OK.  I'll be right back.

F71daras

```
 1            (Recess)

 2            THE COURT:  You may be seated.

 3            MS. BEAMON:  Your Honor, if I might, there was one

 4    item that I forgot to mention to your Honor.

 5            THE COURT:  OK.

 6            MS. BEAMON:  If I could an approach?  I have given a

 7    copy to the government.  This is a copy of a work performance

 8    rating.  It is just from Mr. Araujo's work as an inmate.  This

 9    is his performance rating, and he was hopeful that your Honor

10    could look at it.

11            THE COURT:  All right.

12            (Handing to the Court)

13            MS. BEAMON:  Thank you very much.

14            (Pause)

15            MS. BEAMON:  I think that what your Honor will see is

16    that Mr. Araujo has worked very diligently at his job as an

17    orderly, and he's gotten all very good, goods and outstandings

18    for his job and he's very proud, and we think that this,

19    further to your Honor's questions, shows the industriousness

20    and the willingness to do just very basic hard work that is

21    required in order to better oneself, and Mr. Araujo reminded me

22    that he thinks this demonstrates how hard he is going to work

23    when he leaves.

24            THE COURT:  OK.  Has the government had an opportunity

25    to look at this?
```

F71daras

1          MR. CAPONE:  Yes, your Honor.

2          THE COURT:  OK.  Are the parties ready for sentencing?

3          MS. BEAMON:  Yes, your Honor.  Thank you.

4          THE COURT:  Is there any reason why sentence should

5     not be imposed?

6          MR. CAPONE:  No, your Honor.

7          MS. BEAMON:  No, your Honor.

8          THE COURT:  Mr. Araujo, are you satisfied with your

9     legal representation up to this point?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  OK.  I recognize that I have the authority

12     to downwardly depart, and I have already done so in this

13     matter.  I recognize that I have the authority to further

14     downwardly depart and that I have the authority to vary under

15     the guidelines.  I don't believe any further departure or

16     variance is appropriate for this case.

17          In terms of forfeiture, what is the government's

18     position on forfeiture?

19          MR. CAPONE:  If I can just have one second, your

20     Honor?

21          (Pause)

22          My understanding, your Honor, is that there was a

23     forfeiture order executed and handed up at the first

24     proceeding.

25          THE COURT:  OK.  The forfeiture order was executed

F71daras

1    previously and I did grant that.

2           Regarding restitution, is the government seeking any

3    restitution in this matter?

4           MR. CAPONE:  No, your Honor.

5           THE COURT:  I will impose the special assessment for

6    Counts One and Two of $200.

7           I will not impose a fine.

8           In terms of supervised release, I will impose a term

9    of three years supervised release for each count, Counts One

10   and Two, to run concurrently with each other.

11          I will impose the mandatory conditions of supervised

12   release.  In addition, I will impose the standard conditions of

13   supervision with the following special conditions:

14          That the defendant will participate in a program

15   approved by the United States Probation Office which program

16   may include testing to determine whether he has reverted to

17   using drugs or alcohol.  The Court authorizes the release of

18   available drug treatment evaluations and reports to the

19   substance abuse treatment provider, as approved by the

20   probation officer.  The defendant will be required to

21   contribute to the cost of services rendered in an amount

22   determined by the probation officer based on the ability to pay

23   or availability of third-party payment.

24          I will also impose the search condition:  That the

25   defendant shall submit his person, residence, place of

F71daras

business, vehicle, or any other premises under his control to a

search on the basis that the probation officer has reasonable

belief that contraband or evidence of a violation of the

conditions of release may be found.  The search must be

conducted at a reasonable time and in a reasonable manner.

Failure to submit to a search may be grounds for revocation.

The defendant shall inform any other residents that the

premises may be subject to search pursuant to this condition.

             The defendant should report to the nearest Probation

Office within 72 hours of release from custody, and he should

be supervised by the district of residence.

             Regarding the term of custody, as I previously

indicated, after the downward departure and adjustment, there

is a nonbinding guideline range of 36 to 57 months.  As I

indicated, I recognize the authority to further downwardly

depart or upwardly depart and the authority to vary.  I don't

believe that that is appropriate in this case.

             I am going to sentence Mr. Araujo to a term of custody

of 41 months for Counts One and Two to be served concurrently

with each other.

             I believe there is also a request by the defense that

the sentence for the federal case should be run concurrently

with the sentence for the state case since this is relevant

conduct.  I believe that the government does not object to that

but I wanted to make sure.  Is there any position of the

F71daras

1   government on that?

2            MR. CAPONE:  No.  That is correct, your Honor.

3            THE COURT:  OK.  And I will impose the terms -- those

4   two terms -- concurrent with the state sentence -- with the

5   undischarged state sentence.

6            Are there any open counts?

7            MR. CAPONE:  Yes, your Honor.  The government moves to

8   dismiss them.

9            THE COURT:  OK.  That is granted.

10            Mr. Araujo, I wish you the best of luck in dealing

11   with your addiction.  I wish you the best of luck in terms of

12   trying to make better decisions in terms of not only who you

13   hang out with but how you live your life, and I hope that you

14   are able -- as you have indicated, that you are able to stay

15   focused and be there for your family and be there for yourself.

16   You have a lot of people here in this courtroom who support you

17   and they have written lots of letters on your behalf, and, as

18   indicated, the last time you were here, you had someone come up

19   and speak on your behalf.  So you will have a lot of community

20   support.  But you are going to have to do this on your own, a

21   large part of this.  And when you feel that temptation, you are

22   going to have to figure out a way to avoid yielding to it.

23            So I do wish you the best of luck.

24            Let me ask counsel, since there has been reference to

25   Mr. Araujo's drug addiction, my understanding is that he is in

F71daras

1    state custody.  Is there any request regarding any sort of drug

2    treatment or the like to the extent that he ends up in federal

3    custody?

4         MS. BEAMON:  There is, your Honor.  We have done

5    extensive research as to whether or not Mr. Araujo is eligible

6    for the RDAP program, with which I know your Honor is very

7    familiar.  We would request that Mr. Araujo be considered --

8    that your Honor recommend Mr. Araujo for consideration for the

9    RDAP program.

10        We have spoken to BOP directly.  It is not entirely

11   clear that he will qualify for it because of his period of

12   sobriety, your Honor.  But having worked through it with the

13   Bureau of Prisons, we think that the best course is to request

14   that your Honor recommend it, and that if they determine that

15   he is not eligible because of his period of sobriety since the

16   Shock Incarceration Program, that he nonetheless be considered

17   for other drug treatment programs while incarcerated.

18        THE COURT:  OK.  Counsel for the government, any

19   position on that?

20        MR. CAPONE:  No objection to that, your Honor.

21        THE COURT:  OK.  So I will make that recommendation to

22   the Bureau of Prisons.

23        That is the sentence of the Court.

24        Mr. Araujo, you have a statutory right to appeal.  If

25   you cannot afford to hire an attorney to help you prosecute the

F71daras

1    appeal, the Court will give you an attorney for free.  There

2    are time constraints on your ability to appeal so you should

3    talk to your lawyer about that.

4            And, again, I want to thank the people in the audience

5    who have been here to show their support for Mr. Araujo and all

6    of your letters of support.

7            That is the sentence of the Court.

8            Are there any other applications by the government?

9            MR. CAPONE:  No, your Honor.

10            THE COURT:  Anything else by the defense?

11            MS. BEAMON:  Your Honor, just could we also ask your

12    Honor to recommend that Mr. Araujo be incarcerated in the

13    northeast region of the Bureau of Prisons so that he can have

14    access to the support of his family members?

15            THE COURT:  OK.  I will make that recommendation as

16    well.

17            OK.  Thank you very much.

18            MS. BEAMON:  Thank you, your Honor.

19            MR. CAPONE:  Thank you, your Honor.

20

21                                      -   -   -

22

23

24

25